SUMMARY MEMORANDUM OPINION
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| LAWRENCE P. NOVAK, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 11-0466 (RLW) |
|  | ) | |
| THE DEPARTMENT OF JUSTICE, *et al.*, | ) | |
|  | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**[1]

This matter is before the Court on Defendant's Renewed Motion for Summary Judgment. For the reasons discussed below, the motion will be granted.

## I.  BACKGROUND

In January 2010, the plaintiff, a federal prisoner, submitted to the United States Department of Justice ("DOJ") a request pursuant to the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, for the following:

---

[1] This unpublished memorandum opinion is intended solely to inform the parties and any reviewing court of the basis for the instant ruling, or alternatively, to assist in any potential future analysis of the *res judicata*, law of the case, or preclusive effect of the ruling. The Court has designated this opinion as "not intended for publication," but this Court cannot prevent or prohibit the publication of this opinion in the various and sundry electronic and legal databases (as it is a public document), and this Court cannot prevent or prohibit the citation of this opinion by counsel. *Cf.* Fed. R. App. P. 32.1. Nonetheless, as stated in the operational handbook adopted by our Court of Appeals, "counsel are reminded that the Court's decision to issue an unpublished disposition means that the Court sees no precedential value in that disposition." D.C. Circuit Handbook of Practice and Internal Procedures 43 (2011).

1

SUMMARY MEMORANDUM OPINION
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

> [A] copy of all records wherein my name is utilized, and this request is all inclusive. I will expect information from every retrievable source to include every system of records (including systems CS-.125; CS-.127; CS-.129; CS-.133; CS-.156; CS-.212; CS-.224; CS-.244; CS-.258) which includes computers. I specifically request all records in regards to electronic surveillance.

Defs.' Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J. ("Defs.' Mem."), Decl. of Catherine Gonzalez Gallego ("Gallego Decl."), Ex. 1 (Freedom of Information/Privacy Act Request dated January 28, 2010) at 1.  Staff at the FOIA/PA Mail Referral Unit of the DOJ's Justice Management Division, forwarded the request to the DOJ's Criminal Division and to the Federal Bureau of Investigation ("FBI").  *See* Compl., Ex. 1 (Letter to the plaintiff from Paula A. Scholz, Assistant Director, Conference and Contract Section, Facilities and Administrative Services Staff, Justice Management Division, DOJ, dated February 23, 2010) at 1-2 (exhibits number designated by the Court).

Among the responsive records located by the Criminal Division were those originating with the Office of the Solicitor General ("OSG").  Gallego Decl. ¶ 9.  These records were referred to the OSG for its direct response to the plaintiff.  *Id.*, Ex. 6 (Letter to plaintiff from Rena Y. Kim, Chief, Freedom of Information/Privacy Act Unit, Office of Enforcement Operations, Criminal Division, dated September 28, 2010) at 2.  The OSC withheld information under Exemption 5, *see* Compl., Ex. 9 (Letter to plaintiff from Valerie H. Hall, Executive Officer, OSG, dated October 4, 2010) at 1, but the supporting declaration did not explain this decision.

Among the responsive records located by the FBI was "a two-page memorandum from the Witness Security and Special Operations Unit (WITSEC) to the FBI regarding the use of a cooperating inmate," a document which originated from the Criminal Division.  Defs.' Mem.,

2

Decl. of Kristin L. Ellis ("Ellis Decl.") ¶ 7. The Criminal Division withheld the document in full under Exemptions 6, 7(C), 7(D), 7(E), and 7(F). *Id.*; *see id.*, Ex. I (Letter to plaintiff from R.Y. Kim dated June 7, 2011). Because the Criminal Division's supporting declaration failed to explain the basis for withholding information regarding law enforcement techniques and procedures under Exemption 7(E), the Court could not determine whether the agency complied with the FOIA.

The sole matters remaining for resolution are the OSG's withholdings under Exemption 5 and the Criminal Division's withholdings under Exemption 7(E).

## II. DISCUSSION

### A. *Summary Judgment in a FOIA Case*

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). The Court grants summary judgment if the movant shows that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In a FOIA action to compel production of agency records, the agency "is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the [FOIA's] inspection requirements.'" *Students Against Genocide v. Dep't of State*, 257 F. 3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1978)). Summary judgment may be based solely on information provided in an agency's supporting affidavits or declarations if they are relatively detailed and when they describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the

3

information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

### B.  Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not available in discovery, it may be withheld from FOIA requesters." *Burka v. U.S. Dep't of Health & Human Servs.*, 87 F.3d 508, 516 (D.C. Cir. 1996) (internal quotation marks omitted); *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148 (1975).  This exemption "is interpreted to encompass . . . three evidentiary privileges: the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege." *Tax Analysts v. IRS*, 294 F.3d 71, 76 (D.C. Cir. 2002); *Citizens for Responsibility and Ethics in Washington v. U.S. Dep't of Educ.*, __ F. Supp. 2d __, __, 2012 WL 5907027, at *8 (D.D.C. Nov. 26, 2012) (citations omitted).

Invoking both the attorney work product and the deliberative process privileges, *see* Def.'s Mem. of P. & A. in Supp. of its Renewed Mot. for Summ. J. ("Renewed Mot."), Decl. of Valerie H. Hall ("Hall Decl.") ¶¶ 7-10, the OSG withholds in full two documents described as "internal memoranda prepared by attorneys discussing whether OSG should appeal a decision by the District Court to suppress evidence in a case involving Plaintiff."  Hall Decl. ¶ 6.[2]

---

[2]   A third document, described as "[t]he decisional document reflecting the Solicitor General's determination," Hall Decl. ¶ 6, has been released to the plaintiff in full, *id.* ¶ 5.

SUMMARY MEMORANDUM OPINION
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

1. Attorney Work Product Privilege

"The work-product doctrine shields materials 'prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . .'" *Judicial Watch, Inc. v. Dep't of Justice*, 432 F.3d 366, 369 (D.C. Cir. 2005) (quoting Fed. R. Civ. P. 26(b)(3)); *see Hickman v. Taylor*, 329 U.S. 495 (1947). The privilege also protects records containing the "mental impressions, conclusions, opinions or legal theories of an attorney" and those "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3); *see Miller v. U.S. Dep't of Justice*, 562 F. Supp. 2d 82, 115 (D.D.C. 2008) (concluding that documents which "reflect such matters as trial preparation, trial strategy, interpretation, personal evaluations and opinions pertinent to [plaintiff's] criminal case" qualify as attorney work product under Exemption 5); *Heggestad v. U.S. Dep't of Justice,* 182 F. Supp. 2d 1, 8 (D.D.C. 2000) (stating that the attorney work product privilege "covers factual materials prepared in anticipation of litigation, as well as mental impressions, conclusions, opinions, and legal theories"). For example, a memorandum containing "extensive legal analyses of potential claims available to the FDIC concerning fraudulent loans," *Martin v. Dep't of Justice*, 488 F.3d 446, 455 (D.C. Cir. 2007), is protected under Exemption 5, as are records setting forth "legal strategies . . . because they relate to foreseeable litigation arising out of the government's criminal investigations," *Soghoian v. U.S. Dep't of Justice*, __ F. Supp. 2d __, __, 2012 WL 3090309, at *7 (D.D.C. July 31, 2012).

2. Deliberative Process Privilege

"The deliberative process privilege protects documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Loving v. Dep't of Defense*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting *Dep't of Interior v. Klamath Water Users Protective Ass'n,* 532 U.S. 1, 8 (2001))

5

(internal quotation marks omitted).  It "shields only government 'materials which are both predecisional and deliberative.'"  *Tax Analysts v. IRS*, 117 F.3d 607, 616 (D.C. Cir. 1997) (quoting *Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)).  For example, the exemption "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency."  *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

To show that a document is predecisional, the agency need not identify a specific final agency decision; it is sufficient to establish "what deliberative process is involved, and the role played by the documents at issue in the course of that process."  *Heggestad*, 182 F. Supp. 2d at 7 (quoting *Coastal States Gas*, 617 F.2d at 868).  A document is "deliberative" if it "makes recommendations or expresses opinions on legal or policy matters."  *Vaughn v. Rosen*, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975).  However, if "[a] document . . . does nothing more than explain an existing policy [it] cannot be considered deliberative."  *Public Citizen, Inc. v. OMB,* 598 F.3d 865, 876 (D.C. Cir. 2010).  The deliberative process privilege is thought to "prevent injury to the quality of agency decisions."  *Sears, Roebuck,* 421 U.S. at 151; *see Coastal States Gas*, 617 F. 2d at 866.  Such protection encourages frank discussion of policy matters, prevents premature disclosure of proposed policies, and avoids public confusion that may result from disclosure of rationales that were not ultimately grounds for agency action.  *See, e.g., Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982).

The OSG's declarant explains that the Solicitor General is responsible for "determining whether, and to what extent, appeals will be taken by the Government to all appellate courts," and his decision requires consideration of "legal, factual and policy factors."  Hall Decl. ¶ 8

6

(brackets and citations omitted). OSG attorneys "typically prepare memoranda to assist the Solicitor General in making" such litigation judgments. *Id.*

According to the declarant, "[b]oth records were prepared by OSC attorneys, during the pendency of the criminal prosecution of Plaintiff by the United States Attorney's Office for the District of Massachusetts, specifically to advise the Solicitor General in his decision on whether to appeal a District Court decision suppressing evidence in a criminal trial." *Id.* As such, the declarant states, the records are protected attorney work product "reflect[ing] the United States' theory of the case and recommend[ing] litigation strategy." *Id.* Further, the declarant avers that the records are protected under the deliberative process privilege. *See id.* ¶¶ 8-10. They not only qualify as "'inter-agency' [records] because they never left the executive branch of the federal government," *id.* ¶ 8, but also reflect "the internal pre-decisional deliberate process" of the agency," *id.* ¶ 9. "The records analyze case law; consider the government's position if the matter were appealed; and make recommendations to the Solicitor General about how to proceed with the appeal." *Id.* Inclusion of "purely factual material" in these records does not render them subject to disclosure because here, the declarant explains, the "specific facts selected by the attorney authors are so inextricably intertwined with deliberative material that factual information cannot be meaningfully segregated." *Id.* ¶ 10.

The plaintiff challenges the declarant's representations on the ground that the arguments set forth in the withheld records are the same arguments made publicly in court. *See* Opp'n to Valerie Hall Decl. ¶¶ 7-9. He argues that the information is withheld in error because it already has entered the public domain. *See id.* The plaintiff misunderstands the nature of Exemption 5. Assuming that arguments set forth in the two OSG documents also were made in court, at most the OSG's final determination would have been publicly disclosed. Exemption 5 protects both

7

the material prepared by an attorney in anticipation of litigation and the internal pre-decisional discussions within the agency leading to the OSG's final determination.

Materials may be withheld under Exemption 5 under both the deliberative process privilege and the attorney work product privilege. *See, e.g., Gov't Accountability Project v. U.S. Dep't of Justice*, 852 F. Supp. 2d 14, 24 n.3 (D.D.C. 2012); *Wolfson v. United States*, 672 F. Supp. 2d 20, 29 (D.D.C. 2009). The OSG establishes that the two documents at issue in this case are protected under both privileges, and the declarant avers that "there is no reasonably segregable information" for release to plaintiff. Hall Decl. ¶ 11.

*C. Exemption 7(E)*

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the production of such . . . information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). D.C. Circuit precedent "sets a relatively low bar for the agency to justify withholding" information under Exemption 7(E)." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). The exemption allows for withholding information in the face of "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown LLP v. IRS,* 562 F.3d 1190, 1193 (D.C. Cir. 2009).

The Criminal Division withheld in full a two-page memorandum, from the Criminal Division's Witness Security and Special Operations Unit (WITSEC) to the FBI, pertaining to the

use of a federal prisoner in a criminal investigation. Ellis Decl. ¶¶ 7, 24; Renewed Mot., Decl. of John E. Cunningham III ("Cunningham Decl.") ¶ 4. This memorandum "prospectively authorized the FBI to employ an investigative technique involving the use of a cooperating Federal prisoner[] and . . . outlined the parameters for use of the witness' cooperation." Cunningham Decl. ¶ 7. The Criminal Division thus has demonstrated that this memorandum is a law enforcement record within the scope of Exemption 7 and, for purposes of the second clause of Exemption 7(E), that its release to plaintiff would disclose guidelines for law enforcement investigations.

      The Criminal Division's declarants aver that release of information in the memorandum could subject the prisoner witness to physical harm. Ellis Decl. ¶ 17; Cunningham Decl. ¶ 7. Although "[l]aw enforcement's use of cooperating inmates is not a secret technique, the particular techniques and procedures [employed] are not matters the [DOJ] generally makes public." Ellis Decl. ¶ 25; *see* Cunningham Decl. ¶ 8. The WITSEC program largely operates in secret, and "its effectiveness depends largely on protecting details about [its] operation." Ellis Decl. ¶ 25. Furthermore, "[i]t is foreseeable that disclosure of [an inmate witness'] cooperation and its parameters could reasonably create a risk that the witness will suffer bodily harm or that in the future, other potential incarcerated cooperators might become reluctant to offer their assistance to law enforcement." Cunningham Decl. ¶ 7. According to the declarant, "an inmate who elects to cooperate with law enforcement authorities undertakes a calculated risk of possible death or injury," and disclosure of his cooperation "would only increase the potential risk of harm to those who . . . offer their cooperation and assistance to law enforcement." *Id.*; *see* Ellis Decl. ¶ 25. "[O]nce exempt information was excised" from the Criminal Division's memorandum, "the only remaining information would be the names of a WITSEC supervisor

9

and an FBI supervisor, and some disjointed sentence fragments having minimal or no information content in the absence of the excised information." Ellis Decl. ¶ 27.

The plaintiff responds that the Criminal Division's submission "[o]nce again . . . lacks the information necessary to see if said document qualifies for said exemption." Pl.'s Mem. of P. & A. in Opp'n to Renewed Mot. for Summ. J. at 7 (page number designated by the Court). According to the plaintiff, the declaration is merely an "attempt[] to block public action which goes to what the government gave to a convicted felon," the prisoner witness, whom the plaintiff describes as "a major drug user and drug distributor," allegedly "in exchange to set up a leader of a major political party for political reasons." Resp. to Decl. of John Cunningham at 2 (page number designated by the Court). None of these arguments address the applicability of Exemption 7(E), however, and without evidence to support his allegations of government wrongdoing, the plaintiff fails to rebut the presumption of good faith afforded the declarations. *See SafeCards Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

### D. Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions. 5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.,* 177 F.3d 1022 (D.C. Cir. 1999). The Court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Powell v. U.S. Bureau of Prisons,* 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army,* 611 F.2d 738, 744 (9th Cir. 1979)).

SUMMARY MEMORANDUM OPINION
NOT INTENDED FOR PUBLICATION IN THE OFFICIAL REPORTERS

Based on all the supporting declarations and Vaughn indices filed in this case, the Court concludes that the agencies adequately specify "which portions of the document[s] are disclosable and which are allegedly exempt." *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973).

### III.  CONCLUSION

Both the OSG and the Criminal Division have demonstrated compliance with the FOIA, and the renewed motion will be granted.  Now that no matters are outstanding, and because each agency has demonstrated its compliance with the FOIA and entitlement to judgment as a matter of law, final judgment will be entered in favor of the defendants.  An Order consistent with this Memorandum Opinion and with prior opinions and orders of this Court is issued separately on this same date.

DATE:    February 12, 2013

                                    ROBERT L. WILKINS
                                    United States District Judge